**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTINE FRANCIS, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00823-SRC |
| | ) | |
| COMPASS GROUP USA, INC., | ) | |
| | ) | |
| Defendant(s). | ) | |

**Memorandum and Order**

Christine Francis worked as a Campus Quality Assurance Manager for Compass, which

prepares and serves food at multiple hospital campuses, including the one where Francis worked.

In her four years on the job, Francis made repeated complaints about food-safety violations, and

she believes that these complaints led to Compass terminating her in 2021.  Soon after, Francis

brought this suit, claiming that Compass wrongfully discharged her because of her complaints

about food safety, among other things, in violation of the Missouri Whistleblower's Protection

Act (the Act) and the common law.  Compass moved to dismiss Francis's common-law claim as

preempted by the Act.  Because the Court finds that the Act abrogates Francis's common-law

claim, or alternatively, that the Act does not infringe on the Missouri constitutional right to a jury

trial, the Court dismisses Count 2.

I.      **Background**

The Court accepts Francis's well-pleaded factual allegations as true for motion to dismiss

purposes.  Christine Francis began working for Compass as Campus Quality Assurance Manager

in January 2017.  Doc. 1-2 at ¶ 6.  Francis claims that over the next few years she made repeated

complaints about food safety and documented instances of improper food safety protocol which

1

resulted in the destruction of numerous batches of meat.  *See* Doc. 1-2 at pp. 2–10.  Francis

alleges that she reported violations of law and well-established public policy to her superiors at

Compass and claims that her reporting contributed to her employment termination in May 2021.

*Id.* at ¶¶ 73, 75–77.

Following her termination, Francis filed a Complaint[1] against her former employer in

state court.  Count 1 of her Complaint asserts a claim for wrongful termination under the Act,

Mo. Rev. Stat. § 285.575, and Count 2 asserts a Missouri common-law claim for wrongful

termination in violation of public policy.  Doc. 1-2 at pp. 8–11.  Having removed the case to this

Court, Compass now moves to dismiss Count 2 of the Complaint for failure to state a claim upon

which relief can be granted, arguing that the Missouri legislature abrogated common-law

wrongful-termination claims in 2017 when it passed the Act.  Doc. 15.

## II.    Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice

pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to

give "a short and plain statement showing that the pleader is entitled to relief . . . ."  To meet this

standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  This requirement of

facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Park

Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting

---

[1] A "petition" in Missouri state court serves as the analog of a federal "complaint."

*Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).  Ordinarily, only the facts alleged in the complaint are considered for purposes of a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff . . . ."  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677–78.

When interpreting state law, this Court is "bound to apply the law of the state as articulated by the state's highest court."  *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburg, Pa.*, 621 F.3d 697, 707 (8th Cir. 2010) (citing *Baribeau  v. City of Minneapolis*, 596 F.3d 465, 475 (8th Cir. 2010)).  Though not bound by intermediate state court decisions, if "the state's highest court has not spoken, our job is to predict how the state's high court would resolve the issue," and the Court may consider intermediate courts' decisions "to the extent they contain sound reasoning."  *Id.* (citing *Lancaster v. Am. & Foreign Ins. Co.*, 272 F.3d 1059, 1062

3

(8th Cir. 2001)).  Such decisions are often "the best evidence" of how the highest court would

rule." *Id.*

### III.   Discussion

In Count 2, Francis claims that after she reported violations of law and well-established

public policy to her superiors, Compass wrongfully terminated her, in violation of the common-

law public-policy exception to the at-will employment doctrine.  Doc. 1-2 at ¶¶ 73, 77.  Compass

argues that the Act abrogates Francis's common-law claim.  Doc. 16 at p. 1.  Francis responds

that the Act is unconstitutional because it interferes with the right to a trial by jury guaranteed by

the Missouri Constitution.  Doc. 17 at p. 2.  The Court agrees with Compass.

### A.   Read plainly, the Act abrogated common-law claims for wrongful termination in violation of public policy.

In 2017—before Compass terminated Francis—the Missouri legislature revised portions

of the statutes relating to unlawful employment practices.  One of these statutes, the Act, states in

relevant part:

> This section is intended to codify the existing common law exceptions to the at-will employment doctrine and to limit their future expansion by the courts. This section, in addition to chapter 213 and chapter 287, shall provide the exclusive remedy for any and all claims of unlawful employment practices.

Mo. Rev. Stat. § 285.575.3.  Section 213.070.2 similarly states: "[t]his chapter, in addition to

chapter 285 and chapter 287, shall provide the exclusive remedy for any and all claims for injury

or damages arising out of an employment relationship."

Compass argues that, read plainly, these three statutes—the Act (chapter 285), the

Missouri Human Rights Act (chapter 213), and the Missouri Workers' Compensation Law

(chapter 287)—abrogate common-law claims like the one in this case.  Doc. 16 at p. 3 (citing

*Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 789 (Mo. 2016) ("If the intent of the legislature is

clear and unambiguous, by giving the language used in the statute its plain and ordinary

meaning, then [this Court is] bound by that intent and cannot resort to any statutory construction in interpreting the statute.") (internal quotation omitted)); *see also Abrogate*, *Black's Law Dictionary* (11th ed. 2019) (defining "abrogate" as "to abolish (a law or custom) by formal or authoritative action; to annul or repeal.").

The Missouri Supreme Court has identified that "[t]he primary goal of statutory interpretation is to give effect to legislative intent, which is most clearly evidenced by the plain text of the statute." *State ex rel. Goldsworthy v. Kanatzar*, 543 S.W.3d 582, 585 (Mo. 2018). Courts must give undefined statutory words "their plain and ordinary meaning as found in the dictionary." *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 723 (Mo. 2017).

Here, the Court finds that the Missouri legislature abolished common-law wrongful-termination claims by providing that these three statutes serve as the "exclusive remedy for any and all claims of unlawful employment practices." Mo. Rev. Stat. § 285.575.3. The plain text of the statute compels this conclusion. "Exclusive" means "single" or "sole." *Webster's Third New International Dictionary* 793 (2002). "Remedy" means "the legal means to recover a right or to prevent or obtain redress for a wrong." *Id.* at 1920. Thus, these three statutes provide the sole means to obtain redress for employment-related wrongs. Wrongful termination claims plainly involve "unlawful employment practices," Mo. Rev. Stat. § 285.575.3, and "aris[e] out of an employment relationship," Mo. Rev. Stat. § 213.070.2, and thus fall within the ambit of the statutes. Additionally, "codify" means "to reduce to a code (as laws)." *Webster's Third New International Dictionary* 438 (2002). Thus, the legislature's stated intent to "codify the existing common law exceptions," Mo. Rev. Stat. § 285.575.3, reinforces the conclusion that the statutes "reduced to a code" the common law remedies relating to employment.

Neither the Missouri Supreme Court nor the Missouri Court of Appeals has addressed this question, though other judges on this Court have.  The only two Missouri appellate cases the Court found that mention the Act involved claims arising before the Act's effective date.  *See Jaeger v. Res. for Hum. Dev., Inc.*, 605 S.W.3d 586, 590 n.5 (Mo. Ct. App. 2020) (acknowledging that "[e]ffective August 2017, a new 'Whistleblower's Protection Act,' RSMo § 285.575, purports by its terms 'to codify the existing common law exceptions to the at-will employment doctrine and to limit their future expansion by the courts,' and 'in addition to chapter 213 and chapter 287, [to] provide the exclusive remedy for any and all claims of unlawful employment practices'"); *Yerra v. Mercy Clinic Springfield Communities*, 536 S.W.3d 348, 351 n.3 (Mo. Ct. App. 2017) (same).

In contrast, Judge Stephen N. Limbaugh, Jr. found that "[i]t is apparent that the [Act], the Missouri Human Rights Act, and the Missouri Workers' Compensation Law are the 'exclusive remedy for any and all claims of unlawful employment practices.'"  *Cooksey v. All. Bank*, No. 1:20-cv-219-SNLJ, 2021 WL 2187911, at *4 (E.D. Mo. May 28, 2021) (quoting Mo. Rev. Stat. § 285.575.3) (dismissing common-law wrongful-discharge claim).  Other judges on this Court have similarly ruled.  *See Abts v. Mercy Health*, 4:19-cv-02768-JCH, 2020 WL 2308413, at *5 (E.D. Mo. May 8, 2020), *reconsideration denied*, 4:19-cv-02768-JCH, 2020 WL 3469357 (E.D. Mo. June 25, 2020) ("Count III [common-law wrongful-discharge claim] is precisely the sort of claim explicitly abrogated by statute, and is therefore barred by Missouri law and must be dismissed."); *Mucci v. St. Francois Cnty. Ambulance Dist.*, 4:19-cv-01868-NCC, 2019 WL 6170721, at *5 (E.D. Mo. Nov. 20, 2019) (dismissing common-law wrongful-discharge claim because "the [Act] explicitly replaces the common law cause of action"); *see also Huskey v. Petsmart, Inc.*, No. 18-00813-CV-W-NKL, 2019 WL 122873, at *2 (W.D. Mo. Jan. 7, 2019)

("[I]n Missouri, damages arising from the employment relationship cannot be redressed except through the specified statutes.").

### B.     The Missouri legislature possesses the authority to abrogate common law claims.

The plain language of the statutes makes clear that the legislature intended to abrogate common-law employment-related claims—and Missouri law makes equally clear the authority of the legislature to do so.  Under Missouri law, "no act of the general assembly or law of this state shall be held to be invalid, or limited in its scope or effect by the courts of this state, for the reason that it is in derogation of, or in conflict with, the common law . . . ."  Mo. Rev. Stat. § 1.010.

Recently, in *Ordinola v. Univ. Physician Assocs.*, 625 S.W.3d 445 (Mo. 2021), the Missouri Supreme Court considered a constitutional challenge to Mo. Rev. Stat § 538.210, which states in relevant part: "[a] statutory cause of action for damages against a health care provider for personal injury or death arising out of the rendering of or failure to render health care services is hereby created, replacing any such common law cause of action."  Upholding the constitutionality of the statute, the court applied *Sanders v. Ahmed*, 364 S.W.3d 195 (Mo. 2012)—a Missouri Supreme Court case dealing with statutorily created causes of action—rather than *Watts v. Lester E. Cox Med. Centers*, 376 S.W.3d 633 (Mo. 2012), in which that court addressed common-law claims.  *Ordinola*, 625 S.W.3d at 450–51.  The court stated that "[i]t is undisputed that the General Assembly possesses the authority to abolish common law causes of action."  *Id.* at 450 (citing *Kilmer v. Mun*, 17 S.W.3d 545, 550 (Mo. 2000)).

Drawing on *Ordinola*, Compass argues that "[t]he same is true here – the legislature had the authority to enact the [Act], replacing the common law cause of action, and doing so was constitutional."  Doc. 18 at p. 4.  For the reasons explained above, the Court agrees.  And as a

result, the Court finds that the Act abrogates the common-law wrongful-termination claim that

Francis alleges in Count 2 of her complaint.

C.     **The Act does not violate the right to a jury trial under the Missouri Constitution.**

Attempting to differentiate this case from *Ordinola*—decided after Francis filed her

complaint—Francis argues that because "[o]n its face, the [Act] states that it codifies the

common law exception, . . . the analysis here is more like *Watts* – which addressed common law

claims – than [*Ordinola*], which did not."  Doc. 17 at p. 5.  Seemingly echoing language from the

dissent in *Ordinola*, Francis argues that the Act must be unconstitutional under *Watts* because it

interferes with the right under the Missouri Constitution to a trial by jury.  Doc. 17 at pp. 5–11

("*The framers of statutes cannot abolish a common law claim, with its rights and remedies, and*

*simultaneously reinstate it* <u>*in an altered form*</u>*, without the rights and remedies, when the effect is*

*to deprive citizens of their right to trial by jury.* They cannot, that is, do an end run around the

Missouri Constitution."); *see also Ordinola*, 625 S.W.3d at 455 (Draper, J., dissenting)

(describing the Missouri legislature's abolition of a common-law cause of action and

replacement with an identical statutory one as a "blatant end-run around the Missouri

Constitution").  But even if the Court assumes that *Watts* applies, the Court disagrees with

Francis regarding the Act's constitutionality.

Generally, as the party challenging the constitutionality of the Act, Francis bears a heavy

burden to "clearly and undoubtedly" establish the Act's unconstitutionality.  *See Rentschler v.*

*Nixon*, 311 S.W.3d 783, 786 (Mo. 2010), *as modified on denial of reh'g* (May 11, 2010).  "A

statute is presumed valid and will not be held unconstitutional unless it clearly contravenes a

constitutional provision."  *Id.*; *see also Etling v. Westport Heating & Cooling Servs.*, 92 S.W.3d

771, 773 (Mo. 2003) (internal quotation omitted) (noting that "Missouri [s]tatutes are presumed

to be constitutional, and the party attacking the constitutionality of a statute bears an extremely heavy burden").

Article I, § 22(a) of the Missouri Constitution establishes "[t]hat the right of trial by jury as heretofore enjoyed shall remain inviolate."  As Francis properly emphasizes, courts should "scrutinize[] with utmost care" any curtailment of the constitutional right to trial by jury.  Doc. 17 at p. 2 (quoting *State ex rel. M.D.K. v. Dolan*, 968 S.W.2d 740, 746 n.4 (Mo. Ct. App. 1998)).  "Article I, section 22(a) is one of the fundamental guarantees of the Missouri Constitution . . . ." *Watts*, 376 S.W.3d at 637.

The *Watts* court stated that "[t]he plain language of article I, section 22(a) requires analysis of two propositions to determine if the [statute in question] violates the state constitutional right to trial by jury."  *Id.*  First, a court must identify whether the claim at issue "is included 'within the right of trial by jury as heretofore enjoyed.'"  *Id.* at 637–38 (quoting Mo. Const. art. I, § 22(a)).  "The phrase 'heretofore enjoyed' means that '[c]itizens of Missouri are entitled to a jury trial in all actions to which they would have been entitled to a jury when the Missouri Constitution was adopted' in 1820."  *Id.* at 638 (quoting *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 85 (Mo. 2003)).  An affirmative answer to the first inquiry requires analysis of the second: "determin[ing] whether the right to trial by jury 'remain[s] inviolate.'"  *Id.* (quoting Mo. Const. art. I, § 22(a)) (noting that according to *Webster's Third New International Dictionary* 1190 (1993), "[t]he plain meaning of the word 'inviolate' means 'free from change or blemish, pure or unbroken'").

Here, Francis argues that "[t]he tort of wrongful discharge in violation of public policy is deeply rooted in our law."  Doc. 17 at p. 3 (citing *Boyle v. Vista Eyewear Inc.*, 700 S.W.2d 859 (Mo. Ct. App. 1985); *Fleshner v. Pepose Vision Institute*, 304 S.W.3d 81 (Mo. 2010)).  The

Court agrees in the sense that "public policy"—defined in *Boyle* as "that principle of law which holds that no one can lawfully do that which tends to be injurious to the public or against the public good"—"finds its sources" in Missouri law. *See Boyle*, 700 S.W.2d at 871. But according to the Missouri Supreme Court, the proper question is whether a right to a jury trial existed at common law in 1820 for wrongful discharge in violation of public policy. *See Watts*, 376 S.W.3d at 638. Compass argues that according to Missouri case law, no such common-law right existed in 1820. Doc. 18 at p. 2. The Court agrees with Compass.

In Missouri, courts historically followed the at-will employment-termination doctrine. *See, e.g.*, *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 663 (Mo. 1988) ("Absent a valid contract of employment between the parties, plaintiff as an at will employee could be discharged for cause or without cause."); *Christy v. Petrus*, 295 S.W.2d 122, 124 (Mo. 1956) ("The rule is well established in this state and elsewhere that in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason and, in such case, no action can be maintained for wrongful discharge.").

The Missouri Court of Appeals first recognized the public-policy exception to the at-will employment doctrine in 1985 in *Boyle*, 700 S.W.2d at 878, and the Missouri Supreme Court first recognized it twenty-five years later in *Fleshner*, 304 S.W.3d at 91–92. In *Fleshner*, the Missouri Supreme Court noted that "[s]ince [*Boyle*], the court of appeals has recognized the public-policy exception to the at-will-employment rule" and observed that the Missouri Supreme Court itself had "never explicitly recognized the public-policy exception." *Id.* at 91 (citing prior cases where the Missouri Supreme Court had declined to alter the common-law employment-at-will doctrine); *see also Brenneke v. Dep't of Mo., Veterans of Foreign Wars of U.S. of Am.*, 984

S.W.2d 134, 138 (Mo. Ct. App. 1998) ("That exception, commonly referred to as the 'whistleblower' exception, was first recognized in *Boyle*.").  Because the public-policy exception did not exist in Missouri until more than a century and a half after adoption of the Missouri Constitution, the Court need not address the second *Watts* inquiry, and Francis's constitutional challenge fails.

## IV.     Conclusion

The Court finds that *Ordinola* applies here, and that the Act abrogates Francis's common-law claim for wrongful termination in violation of public policy.  Alternatively, even if *Watts* applies, the Court finds that the Act does not violate the Missouri constitutional right to a jury trial.  Therefore, the Court grants Compass's [15] Motion to Dismiss Count 2 of the Complaint. The Court notes that Francis seeks leave to amend her complaint but has not complied with the undersigned's Judge's Requirements regarding such motions.  *See* Doc. 19.  The Court accordingly denies the motion without prejudice and directs Francis to file a compliant motion no later than November 22, 2021.


So Ordered this 16th day of November 2021.

SLR.CR

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**

11